IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) No. 4:19 CR 627 SNLJ(PLC) |
| | ) |
| TERRELL HARROLD | ) |
| | ) |
|     Defendant. | ) |

## MOTION FOR RECONSIDERATION OF DETENTION

Mr. TERRELL HARROLD, through his attorney, Assistant Federal Public Defender Melissa K. Goymerac, moves this Court for reconsideration of the Court's Order of Detention, and to release him on bond due to material changes in circumstances following the Court's earlier consideration of the matter. Defendant requests the Court grant a hearing on the motion without undue delay. In support of the motion, Harrold states:

On August 12, 2019, following a contested hearing, Mr. Harrold was ordered detained. Since the entry of that Detention Order (Doc #31), circumstances have materially changed which justify the Court's reconsideration and Mr. Harrold's release on bond.

### I.   Change in Potential Penalty/Alleged Means of the Offense:

At the time of the detention hearing, Mr. Harrold was charged by complaint under 18 U.S.C. § 1591(a) (Doc #1). After the detention hearing, but before an Order issued, the Government secured an indictment for "violation of Title 18, United States Code, Sections

1

1591(a) and (b)(1)." (Doc # 28). This set a mandatory minimum penalty of 15 years, as the offense was alleged to have been "effected by means of force, threats of force, fraud or coercion." Seeking sufficient notice for preparation of his defense, Harrold moved the Government for a Bill of Particulars (Doc # 48) clarifying the "force" element. On November 14, 2020, the Government secured a superseding indictment now citing the punishment section in 1591(b)(2). (Doc #54). This reduced the minimum punishment to ten years. Because one of the Court's cited reasons to detain Mr. Harrold was the length of sentence he was facing, a one-third decrease in that amount of time is a significant, material change justifying reconsideration. Additionally, the fact that the Government is no longer alleging of "use of force" changes the nature of the offense alleged. In light of this, the Court should reassess the nature of the danger Mr. Harrold is alleged to present to the community.

II.    Questions Regarding Sufficiency of the Evidence:

At the time he was detained, the Court cited "weight of the evidence is strong" as a reason (Doc #31) for its Order. In the time since the Court considered the issue, several developments have called the weight of the Government's case into question. On October 30, 2019, counsel filed pretrial motions to Dismiss for Lack of Jurisdiction (Doc #49) and a for Bill of Particulars (Doc #48) regarding alleged use of force. As discussed more fully above, the government responded to the Bill of Particulars Motion by superseding its earlier indictment and removing the allegation of use of force (Doc # 53).

A hearing was held on the Motion to Dismiss (Doc #70) and a Report and Recommendation (Doc # 72) followed which revealed a fatal and unfixable defect in the

government's case. Citing instructive language from the Second Circuit, the Magistrate Court noted that to satisfy the interstate commerce element of 18 U.S.C. 1591(a)(1), "the Government need offer sufficient evidence from which to infer only that [defendant's] actions affected interstate commerce." (Doc # 72, pg. 9, internal citations omitted). In response, the United States took the position that "sex trafficking of minors is activity that, **by its nature**, affects interstate commerce," thus relieving them of having to offer proof to satisfy that element.

The Court rejected this contention, noting that "the United States did not cite, and **the undersigned has been unable to find**, any case in which a court held that evidence of intrastate sex trafficking, in the absence of the other factors …, was enough to satisfy the interstate commerce requirement in section 1591." *Id.* Ultimately, the Court found the Motion to Dismiss persuasive but premature. The Report recommended "defendants' Rule 12 motion to dismiss on jurisdictional grounds should be denied ***without prejudice to defendants re-raising the challenge in a motion for judgment of acquittal at the close of the government's case-in-chief.***" Based on the Court's observations of the state of the law, and the absence of case-law support for the Government's position, there is a strong possibility that such a motion would prevail.

More recently, the Government provided a forensic report that cast doubt on the alleged victim's version of events. The Government first disclosed a lab report on the DNA analysis undertaken in the case by the St. Louis Police Department Crime Lab on February 21, 2020 (attached as **Exhibit A**). Swabs were taken from the alleged victim during a SANE exam close in time to the alleged sexual contact with the two

3

codefendants. The victim alleged to police in the reports that she had oral and vaginal sexual contact with the defendants, and that they did not use condoms. Both Harrold and Perry voluntarily submitted to buccal swabs "for elimination purposes," conducted by a forensic officer who took the samples during videotaped interviews provided in discovery. Initial testing indicated from the victim's swabs showed the presence of male DNA, but profiles could not be developed without further specialized testing and analysis due to the nature of the mixture.

The samples were forwarded to the Missouri State Highway Patrol for Y-Str testing, a process where the "male specific" part of the Y-chromosome is isolated to make DNA identifications in complicated samples with a mixture of DNA present.[1] According to that report, disclosed on September 16, 2020, "A partial Y chromosome (male-specific) DNA mixture haplotype, characteristic of originating from two male individuals, was developed. A partial major component haplotype was discerned from the mixture. **Terrell Harrold and Thomas Perry are both eliminated as being the partial major component haplotype.**" (see attached **Exhibit B**). In other words, there was genetic material present from two male individuals, but the defendants were eliminated as possible sources. The report goes on to say that "[i]f reference standards (buccal swabs) are submitted from any male individual associated with this case, further examinations can be performed."

## III.   Additional Context for Criminal History:

The Court cites "prior criminal history" as a reason for Mr. Harrold's detention. His convictions consist solely of driving offenses; for each he was sentenced either to a fine or a

---

[1] *See generally:* Manfred Kayser, *Forensic use of Y-chromosome DNA: a general overview*, available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5418305/ (Last visited 10/1/20).

few days in jail. While Mr. Harrold seems to have a lot of driving offenses, statistics show that this is unsurprising for a Black man in Missouri, especially from 2008-2018 when he sustained his citations. On August 28, 2000, "[c]oncerns by the citizens of Missouri and the Missouri legislature regarding allegations of racial profiling by law enforcement prompted the passage of state law Section 590.650, RSMo (2000)."[2] The law required reporting by law enforcement agencies of specific demographic information for each vehicle stop made in the state. *Id.* According to the Attorney General's Report for 2008, the racial disparity findings "continue[d] a disturbing trend for African-American drivers in Missouri. Specifically, the disparity indexes for African-American drivers have increased each of the last four years." *Id.*

The disparity index is a "gauge of the likelihood of the drivers of a given race or ethnic group are stopped based on their proportion of the residential population 16 and older." *Id.* In 2008, the disparity index showed "the likelihood that an African-American motorist was stopped [was] 1.67 times that of a white motorist." *Id.* The "disturbing trend" continued through 2018, when Harrold sustained his most recent driving offenses. The AG report from 2018 states the problem in stark terms: "Blacks represent 10.9% of Missouri's driving-age population but 19.2% of all vehicle stops…**This means that Blacks were stopped at a rate 76% greater than expected based on their portion of the population sixteen and older.**" Mr. Harrold's criminal history should be considered in this context and weighted accordingly.

---

[2] Missouri Attorney Chris Koster, *2008 Vehicle Stops Executive Summary*, available at: https://ago.mo.gov/home/vehicle-stops-report/2008-executive-summary (Last visited 10/1/20).

There is Domestic Assault case pending in St. Louis County Municipal Court, citation number 16387281-01, related to an arrest in 2016. To date, Mr. Harrold has not sustained a conviction for this or any other crime of violence. The Pretrial Report lists a number of "arrests without conviction," but there is no information regarding when these arrests took place or why they ultimately did not result in conviction. Further, counsel wishes to clarify that Mr. Harrold has never previously been arrested for any kind of sex crime. Counsel confirmed with Pretrial Services that the arrests listed in the "arrests without conviction" section for "Sex Trafficking of a Child Less Than 18 years Old, statutory rape & statutory sodomy" reflect his arrest by state officials for the conduct alleged in the instant case.

IV.    **Covid-19 Pandemic Raises Level of Danger of Continued Detention:**

The United States is in the midst of a national emergency due to the COVID-19 pandemic. This renders Mr. Harrold's continued detention, and the potential prejudice to him, far more dangerous than it was at the time of the Court's initial Order. His continued detention poses an ongoing threat to his health, safety, and life. According to a new study by Stanford Engineering researchers, "[t]he deadly new coronavirus is spreading faster in America's jails and prisons that it did on the Princess diamond cruise ship or the pandemic's outbreak in Wuhan, China."[3] The researchers "knew that prisons and jails had become hot spots for the novel coronavirus because there's very little opportunity for social distancing…and sanitary conditions are comparatively low." *Id.* Their findings confirmed

---

[3] Andrews, Edmund, *Stanford researchers find COVID-19 spreads faster in America's jails than on cruise ships*, September 24, 2020, available at: https://news.stanford.edu/2020/09/24/covid-19-spread-american-prisons/ (Last visited October 6, 2020).

this; the concluded "each infected [prisoner] was spreading the virus to 8.44 other people at the very beginning of the outbreak." *Id.* This means the virus spread 3.6 times faster in jail than on the cruise ship and 4 times faster than in Wuhan. *Id.* Further, as a racial minority, Mr. Harrold is "at increased risk of getting sick and dying from Covid-19" due to "long-standing systemic health and social inequities."[4] Mr. Harrold's continued incarceration could potentially cost him his life, and this is why he is asking the Court to consider releasing him.

## V.  Pandemic-related Delay of the Trial:

On March 24, 2020, the District Court continued the trial of the case, which was set for April 1, 2020. The pandemic is a national emergency, and the Chief Judge issued several orders tolling speedy trial clocks until juries could be assembled without potential danger to all involved. To date, some six months later, the case has not been reset for trial despite the fact that jury trials are once again being scheduled and conducted. This delay prevents Mr. Harrold from having a chance to vindicate his rights at trial. It precludes him from making his likely meritorious claim that the Government cannot prove the element of interstate commerce as presently defined by the available case law. This prejudice again is compounded by the concurrent danger the pandemic causes to his health.

---

[4] Centers for Disease Control, *Health Equity Considerations and Racial and Ethnic Minority Groups*, available at: https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last visited October 6, 2020).

## VI.    Mr. Harrold's Release Plan:

If released, Mr. Harrold would live with his mother Cynthia Harrold at 7630 Hazelcrest Drive, St. Louis, MO 63042. While this is a change from his original home plan with Pretrial Services, the Report reflects that the Pretrial Officer spoke with Mr. Harrold's mother at the time of the initial interview and confirmed the information he provided then. Ms. Harrold is happy to make herself available for interview and to allow a home inspection if necessary. He has work experience in skilled-labor jobs rehabbing houses, including: drywalling, concrete finishing, paint, and tuckpointing, among others. He would be able to support himself, and remain out of trouble, using these skills.

For the reasons cited above, Mr. Harrold prays that the Court will reconsider its Detention Order and release him with conditions sufficient to assure his appearance, including possibly electronic monitoring. In the alternative, due to the pandemic, he requests that the Court, under the provisions of 18 U.S.C. § 3142(i), order him temporarily released to home detention until conditions regarding the national health crisis improve and his case can proceed to trial.

Respectfully submitted,

/s/Melissa K. Goymerac
MELISSA K. GOYMERAC
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Melissa_Goymerac@fd.org

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Dianna Collins, Assistant United States Attorney.

/s/Melissa K. Goymerac
MELISSA K. GOYMERAC
Assistant Federal Public Defender





# ST. LOUIS COUNTY POLICE DEPARTMENT
## CRIME LABORATORY
7900 Forsyth Blvd., Clayton MO 63105
(314) 615-5365 FAX (314) 615-8956
*An ANAB Accredited ISO/IEC 17025 Forensic Testing Laboratory*



# DNA Analysis
## LAB-19-005773 Request 0002

Original Report

<div style="display:flex; justify-content:space-between;">

**AGENCY**

St. Louis County Police
7900 Forsyth Blvd
Clayton, MO 63105

ACN: 099-19-034265
Requesting Officer: Halliday | DSN: 3442

**RELATED PERSON(S)**

Kaitlyn Williams
Terrell Harrold
Thomas Perry

</div>

**RELATED ITEMS**

003-01 -  Vaginal Swabs (2) / Kaitlyn Williams

003-02 -  External Genital Swabs (2) / Kaitlyn Williams

003-03 -  Oral Swabs (2) / Kaitlyn Williams

005-01 -  Reference Standard from K.W. / Kaitlyn Williams

006-01 -  Reference Standard from T.H. / Terrell Harrold

007-01 -  Reference Standard from T.P. / Thomas Perry

# Analysis Results

**Item: 003-01 | Vaginal Swabs (2) / Kaitlyn Williams**

*F1 fraction:*

A female DNA profile consistent with Kaitlyn Williams was detected.

Male quantitation results from this item do not meet the Missouri State Highway Patrol Laboratory's required threshold for Y-STR analysis. No additional testing will be performed at this time.

*F2 fraction:*

A partial female DNA profile consistent with Kaitlyn Williams was detected.

Male quantitation results from this item failed to indicate the presence of male DNA.

---

# St. Louis County Crime Laboratory DNA Analysis
## LAB-19-005773_0002 continued

### Item: 003-02 | External Genital Swabs (2) / Kaitlyn Williams

*F1 fraction:*

A female DNA profile consistent with Kaitlyn Williams was detected.

Male quantitation results from this item indicate the presence of male DNA sufficient to meet the Missouri State Highway Patrol Laboratory's required threshold for Y-STR analysis. This item may be forwarded to the Missouri State Highway Patrol Laboratory for Y-STR analysis upon request.

*F2 fraction:*

A partial female DNA profile consistent with Kaitlyn Williams was detected.

Male quantitation results from this item failed to indicate the presence of male DNA.

### Item: 003-03 | Oral Swabs (2) / Kaitlyn Williams

*F1 fraction:*

A female DNA profile consistent with Kaitlyn Williams was detected.

Male quantitation results from this item failed to indicate the presence of male DNA.

*F2 fraction:*

No definitive DNA typing results were detected. Due to the limited genetic information available, this profile is unsuitable for comparison purposes.

Male quantitation results from this item failed to indicate the presence of male DNA.

### Item: 005-01 | Reference Standard from K.W. / Kaitlyn Williams

A female DNA profile was detected.

### Item: 006-01 | Reference Standard from T.H. / Terrell Harrold

A male DNA profile was detected.  These DNA typing results will be transferred to CODIS (Combined DNA Index System).

### Item: 007-01 | Reference Standard from T.P. / Thomas Perry

A male DNA profile was detected.  These DNA typing results will be transferred to CODIS (Combined DNA Index System).

Please note: items with F1 and F2 fractions were extracted using a differential extraction technique. This technique aims to separate non-sperm cell DNA (F1 fraction) from potential sperm cell DNA (F2 fraction). This terminology does not imply the presence or absence of spermatozoa in this case.

# Technology Utilized

### St. Louis County Crime Laboratory DNA Analysis
*LAB-19-005773_0002 continued*

Amplification of extracted DNA from the above evidence was performed using the Polymerase Chain Reaction (PCR) and profiled at the following GlobalfilerTM STR loci: D3S1358, vWA, D16S539, CSF1PO, TPOX, D8S1179, D21S11, D18S51, D2S441, D19S433, TH01, FGA, D22S1045, D5S818, D13S317, D7S820, SE33, D10S1248, D1S1656, D12S391, D2S1338, DYS391 (STR locus on the Y male chromosome), Y indel (a Y insertion/deletion locus), and the sex-determining marker, Amelogenin.

## Statistical Calculation Notes

Associations without significance in the context of the case do not have statistical weight reported. Statistical calculations for these inclusions can be provided upon request.

## Disposition and CODIS Notes

DNA profiles have been entered into the Combined DNA Index System (CODIS) in accordance with state and national regulations, where regular searches will be performed. Notification will be issued if there is a hit in the database or if the profile(s) is/are removed from CODIS at any time in the future.

The remaining portion(s) of the above evidence and a portion of any remaining extracted DNA that may still exist are being preserved in the St. Louis County Police Crime Laboratory for any additional tests that may be requested in the future.

Unless otherwise noted, Evidence/Packaging was forwarded to Property Control or returned to the Submitting Agency.
The results apply to the sample(s) as received.

The undersigned does hereby certify under RSMo 544.376 that the above and foregoing is a true and accurate copy of the results of laboratory tests conducted. This report may contain opinions and interpretations of the undersigned. The results of analysis relate only to the items tested.

ANALYST/EXAMINER:                                          REVIEWED BY:

*Ashley Callanan* 3923                                          *Justin Lautz* 4181

Ashley Callanan / 3923                                          Justin Lautz / 4181
Forensic Scientist                                          Forensic Scientist



Lab Number: 0588711



Missouri State Highway Patrol
Crime Laboratory Division
425 East Phelps Street Springfield, MO 65806
**An ANAB Accredited Laboratory**

## DNA
## Certified Report

**Agency:**   St Louis County Police Department
7900 Forsyth Blvd
Clayton, MO   63105
**Agency Case #:**  19-5773

**Date of Incident:** 07/20/2019
**County of Incident:** St. Louis

**Subjects Involved:** Williams, Kaitlyn   - victim
Harrold, Terrell   - suspect
Perry, Thomas   - suspect

Container(s) received 04/02/2020
1 (19-5773) One sealed manila envelope
2 (19-5773) One sealed manila envelope
3 (19-5773) One sealed manila envelope
4 (19-5773) One sealed manila envelope
5 (19-5773) One sealed manila envelope

Analysis date(s) 06/12/2020-08/04/2020

Item 1.1 Extract from victim's external genital swabs (3-2F1)
 Analysis Result: A partial Y chromosome (male-specific) DNA mixture haplotype, characteristic of originating from two male individuals, was developed. A partial major component haplotype was discerned from the mixture. Terrell Harrold and Thomas Perry are both eliminated as being the partial major component haplotype. The minor component is uninterpretable and will not be used for comparison purposes due to the loss of genetic information.

Item 2.1 Extraction Negative Control, 19E300ENC_1 (15)
 Analysis Result: No contamination was detected in this sample control.

Item 3.1 Extract from reference standard from Terrell Harrold (6-1-1)
 Analysis Result: A Y chromosome (male-specific) DNA haplotype was developed.

Item 4.1 Extract from reference standard from Thomas Perry (7-1-1)
 Analysis Result: A Y chromosome (male-specific) DNA haplotype was developed.

Item 5.1 Extraction Negative Control, 20E106ENC_1 CAP57 (16)
 Analysis Result: No contamination was detected in this sample control.

If reference standards (buccal swabs) are submitted from any male individuals associated with this case, further examinations can be performed.

The DNA haplotypes were developed using the Polymerase Chain Reaction (PCR) at Promega's PowerPlex Y23 genetic loci.

*Upon completion of all laboratory examinations, the evidence will be available for pick-up.*

*This report contains opinions, interpretations and/or conclusions of the undersigned. I, the undersigned, do hereby certify that the above and foregoing is a true and accurate summation of the results of analyses conducted.*

Criminalist
Jackson Scanlon

*Jack Scanlon*

**Date Report Issued**          08/13/2020